

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

<i>The Silvio J. Mollo Building<br>
One Saint Andrew's Plaza<br>
New York, New York 10007</i>

September 22, 2021

**BY ECF**

The Honorable Kimba M. Wood
Southern District of New York
500 Pearl Street Square
New York, New York 10007

    Re:   *United States v. Sean Merchant*, S4 18 Cr. 527 (KMW)

Dear Judge Wood:

    The Government submits this letter in advance of the sentencing of Sean Merchant ("Merchant" or the "defendant") in the above-referenced matter, currently scheduled for September 29, 2021, at 12:00 p.m. On August 13, 2019, the defendant pleaded guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to one count of sex trafficking of a minor, encompassing his trafficking of three minor victims. Specifically, the defendant sold for sex a 14-year-old minor victim, a 16-year-old minor victim, and a 17-year-old minor victim. The scope of the defendant's trafficking, the number of victims that he exploited, and the magnitude of the harm he caused his victims, makes a sentence within the defendant's stipulated Guidelines range of 235 to 293 months' imprisonment (the "Stipulated Guidelines Range") necessary and appropriate.

**A.  Offense Conduct**

    On July 25, 2018, a Grand Jury sitting in the Southern District of New York returned an indictment, S1 18 Cr. 527 (Dkt. No. 9), charging Sean Merchant, Martique Mcgriff, and Jermaine Myrie in six counts relating to violations of Title 18, United States Code, Sections 1591 and 1594. The Superseding Indictment was unsealed on August 8, 2018. On that date, the defendant was arrested and presented before the Honorable Katharine H. Parker, United States Magistrate Judge for the Southern District of New York, and consented to detention without prejudice. Subsequently, on December 10, 2018, a Grand Jury sitting in this District returned an indictment, S2 18 Cr. 527 (Dkt. No. 38), charging Merchant and his co-defendants—those listed above, plus Steven Lesane—in seven counts alleging sex trafficking offenses. Specifically, the defendant was charged in Count One with conspiring to traffic minor girls for sex, including at least three victims who were, at various points, residents of a treatment facility for troubled youth ("Facility-1"), in violation of Title 18, United States Code, Section 1594(c); in Count Two, with sex trafficking a minor victim who was less than 14 years old in violation of Title 18, United States Code, Sections 1591(a), (b)(1), (b)(2), and 2; in Count Three, with sex trafficking a second minor victim; and in Count Four, with sex trafficking an adult victim through force, fraud, coercion, and a combination of such means in violation of Title 18, United States Code, Sections 1591(a), (b)(1), and 2.

As set forth in the Final Presentence Report, dated November 19, 2019 (the "PSR"), the defendant and his co-defendants conspired to traffic multiple minor girls and adult women from approximately January 2016 until approximately June 2018. (PSR ¶ 12). The defendants worked together to further each other's sex trafficking businesses, including by assisting in posting advertisements online for commercial sex services. (*Id.*) The defendant and his co-defendants also shared locations where they had their victims engage in prostitution for the defendants' benefit. (*Id.*)

In 2017, the defendant recruited a minor child ("Victim-1")[1] when she was approximately 13 years old. (PSR ¶ 13.) Victim-1, who at various points resided at Facility-1, remembered celebrating her 14th birthday around the time she began working for the defendant as a prostitute. (*Id.*) The defendant kept approximately half of the proceeds that Victim-1 received for her sex acts. (*Id.*) Merchant provided Victim-1 with Xanax and Molly laced with crystal methamphetamine. (*Id.*) Victim-1 recalled that these drugs—provided by the defendant—made her vomit. (*Id.*)

The defendant also exploited Victim-2 for his sex trafficking business. (*Id.* at ¶ 14.) As with Victim-1, Victim-2—a 16-year-old girl—resided at Facility-1 at various points in her life. (*Id.*) The defendant also provided Victim-2 with Molly. (*Id.*) The defendant advertised Victim-2 for sex services online. (*Id.*) Victim-2 worked for the defendant at a hotel and at a residence where she had sex with strange men for money at the defendant's direction. (*Id.*)

Finally, the defendant advertised Victim-4, a 17-year-old, for commercial sex services. (*Id.* at ¶ 15.) As with Victim-1 and Victim-2, Victim-4 also resided at Facility-1 at various points in her life. (*Id.*) Victim-4 also worked as a prostitute in the defendant's sex trafficking business. (*Id.*)

**B. Probation's Recommendation and the Defendant's Submission**

The United States Probation Office ("Probation") calculated the defendant's offense level as 36 and criminal history category of IV and a guidelines range of 262 to 327 months' imprisonment.[2] (PSR at 24.) Probation recommends a sentence of 262 months' imprisonment, which is within the Stipulated Guidelines Range. (*Id.* at 26-28.) Probation notes that this offense is Merchant's twelfth criminal conviction. (*Id.*) More fundamentally, Probation supports its recommendation with the following assessment of Merchant's conduct:

---

[1] The references to victims in this submission correspond to those in the PSR. Victim-1, Victim-2, and Victim-4 correspond respectively to Minor Victim-1, Minor Victim-2, and Minor Victim-3 in the Superseding Information filed against Merchant.

[2] Probation found that the defendant had an additional three criminal history points, not included in the defendant's plea agreement with the Government, and accordingly found that the defendant's criminal history category was IV. The Government remains bound by the Stipulated Guidelines Range of 235 to 293 months' imprisonment as agreed to in the Plea Agreement.

> However, while being a father to his daughter, [Merchant] was also able to traffic minor females without any remorse or guilt. Merchant viewed the victims as a business transaction and ignored that they are human beings. The damage to the victims caused by Merchant cannot be undone, and warrants a significant punishment.

(*Id.*) Accordingly, Probation finds that "[w]hen considering the factors noted above and the need to address deterrence, just punishment, respect for the law, and protection of the community, we respectfully recommend and believe that a sentence of 262 months' imprisonment is sufficient but not greater than necessary." (*Id.*)

The defendant's submission requests a sentence of 120 months' imprisonment, which is the mandatory minimum sentence and 115 months below the lower bound of the Stipulated Guidelines Range. (*See* Dkt. No. 179 ("Def. Mem.") at 2; *see also* Dkt. No. 261 ("Def. Supp. Mem.") at 3.)

**C. Applicable Law**

As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

**D. Discussion**

The Government respectfully submits that the seriousness of the offense, the need to promote respect for the law, ensure just punishment, protect the public, and afford adequate deterrence, all warrant imposition of a sentence within the Stipulated Guidelines Range of 235 to 293 months' imprisonment.

*1. Seriousness of the Offense and Respect for the Law, and Just Punishment*

The seriousness of this offense cannot be overstated. The defendant ran a sex trafficking business that exploited some of the most vulnerable members of our society for his pecuniary gain. Merchant recruited children, one of whom was as young as 14-years-old, to have sex with men for money. Merchant also preyed on particularly vulnerable young girls to fuel his sex trafficking business. Specifically, Victim-1, Victim-2, and Victim-4, at various points, all resided at Facility-1. His victims also came from difficult backgrounds, without family support, making them uniquely susceptible to the recruitment and exploitation perpetrated by the defendant. It bears noting that the defendant describes in his submission the adverse circumstances in which he grew up. (Def. Mem. at 3-7.) The Government recognizes those circumstances as mitigating factors. However, those circumstances apply with equal force in the opposite direction as well. The

defendant, based on his own experience, should have been more cognizant of the harm he was perpetrating on his you victims, who came from equally, if not more, difficult background and personal circumstances than his own. But the defendant's conduct makes clear that he did not show understanding or sympathy—or, as his own background might suggest, empathy—to his victims. Instead, Merchant sold these girls for sex: monetizing his victims despite the trauma and degradation that resulted, causing irreparable harm that they must carry for the rest of their lives. A sentence within the Stipulated Guidelines Range matches the seriousness of Merchant's conduct.

### 2. *The Stipulated Guidelines Range Accounts for Merchant's Relative Culpability*

In his submission, the defendant contends that he is relatively less culpable than his co-defendants. (Def. Mem. at 9-10). This suggestion strains credulity and is starkly contradicted by the defendant's own guilty plea as well as that of his co-defendants. In the Government's view, of the five defendants in this case, Merchant is the most culpable, based upon the scope of his conduct, the number of victims, the relative age of his victims, and the circumstances in which he exploited these victims. As this Court is aware, all the defendants in this case have pleaded guilty pursuant to plea agreements with stipulated guidelines ranges. The Government carefully issued these plea offers according to its assessment of the defendants' relative culpability, and the stipulated guidelines in each agreement account for the relative severity of each defendant's conduct, as well as the seriousness of each defendant's criminal history:

- *Ruben Sands*. Sands pleaded guilty to one count of conspiring to violate the Travel Act, which carries a statutory maximum sentence of 60 months' imprisonment. This Court sentenced Sands to 60 months' imprisonment.

- *Jermaine Myrie*. Myrie pleaded guilty to conspiring to sex traffic one minor victim. In his plea agreement, Myrie stipulated that the guidelines range was 135 to 168 months' imprisonment. This Court sentenced Myrie to 135 months' imprisonment.

- *Martique McGriff*. McGriff pleaded guilty to conspiring to sex traffic two adult victims by force, fraud, or coercion. In his plea agreement, McGriff stipulated that the guidelines range is 168 to 210 months' imprisonment.

- *Steven Lesane*. Lesane pleaded guilty to sex trafficking two minor victims. In his plea agreement, Lesane stipulated that the guidelines range was 210 to 262 months' imprisonment with a mandatory minimum sentence of 120 months' imprisonment. This Court sentenced Lesane to 256 months' imprisonment.

Only Lesane is of comparable culpability—however, Lesane's plea agreement encompassed only two victims. Merchant has the most substantial stipulated guidelines range of the five defendants precisely because his conduct was the most offensive—he trafficked three minor victims. Moreover, Merchant was involved in the trafficking businesses of certain of the other co-defendants: he trafficked Victim-1 and Victim-2 out of Reuben Sands' home (PSR at ¶¶ 13-14);

and he trafficked Victim-4 after Jermaine Myrie did the same (PSR ¶ 15); and Victim-3, an adult victim to whom Martique Mcgriff pleaded guilty, also was trafficked by Merchant.[3]

The Stipulated Guidelines Range also is commensurate with the defendant's culpability relative to defendants in other cases arising from the same investigation. As noted in the PSR, the investigation that led to this prosecution began when the FBI's Child Exploitation and Human Trafficking Force received a tip from a non-profit organization about trafficking of minor victims—many of whom were residing, or had previously resided, at Facility-1. (PSR ¶ 8). Ultimately, the investigation led to the prosecution of 19 individuals for sex trafficking offenses, each of whom has been convicted either by entering into a plea agreement or following trial. In general, the Government extended plea agreements involving pleas to sex trafficking offenses to those, like the defendant, whom it viewed as most culpable. In the category of defendants who have been convicted of sex trafficking offenses, violations of Title 18, United States Code, Sections 1591 or 1594(c), the following defendants have been sentenced:

- Hubert Dupigny received a sentence of 300 months' imprisonment after being convicted at trial. *See United States v. Dupigny,* 18 Cr. 528 (JMF).

- Ruben Morciglio was sentenced to 240 months' imprisonment after pleading guilty to one count of sex trafficking a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and two counts of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c).

- Luidji Benjamin was sentenced to 204 months' imprisonment after being convicted at trial of one count of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591(b)(2), and one count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Benjamin*, 18 Cr. 874 (JSR);

- Jabari Kennedy was sentenced to 156 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), in *United States v. Jabari Kennedy, et al.*, 18 Cr. 529 (JFK);

---

[3] Merchant pleaded guilty to the substantive offense of sex trafficking minors, in violation of Title 18, United States Code, Section 1591(b)(2). As part of the broader conspiracy to which Merchant did not plead, and as referenced in the PSR, Merchant also trafficked an adult victim, identified in the indictment as Victim-3. Merchant advertised Victim-3 for commercial sex services online and Victim-3 engaged in commercial sex acts for Merchant's benefit. Victim-3 stated, in substance and in part, that Merchant provided Victim-3 with certain controlled substances, such as Molly and cocaine, so that Victim-3 could continue meeting clients to engage in commercial sex acts. Victim-3 stated also that Merchant used force with Victim-3, including relating to disagreements over "work," *i.e.*, Victim-3's prostitution for Merchant. The defendant did not plead guilty to this conduct and under Section 1B1.3 it is not relevant conduct. However, particularly in light of Merchant's claim regarding his culpability relative to that of his co-defendants and his denial that he provided his victims with controlled substances and alcohol, *see infra*, it is appropriate for this conduct to be considered by the Court under Section 3553(a).

- Lawrence Walsh entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Luidji Benjamin. Walsh received a sentence of time-served after serving approximately 19 months' imprisonment. *See United States v. Lawrence Walsh*, 18 Cr. 874 (JSR).

- Hensley Dupigny entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Hubert Dupigny. Hensley Dupigny received a sentence of 48 months' imprisonment. *See United States v. Hensley Dupigny,* 18 Cr. 528 (JMF).

In addition to claiming that he is less blameworthy than his co-defendants, Merchant also suggests he deserves leniency because (1) he did not feign romantic interest in the minor children he recruited to perform commercial sex acts and (2) he did not violently abuse them or "control[] their movements." (Def. Mem. at 9-10.) Further still, even though he did not object to the PSR, Merchant also "staunchly denies ever supplying the women who worked with him drugs or alcohol." (*Id.*)[4] This Court should reject Merchant's attempt to deflect and rationalize his sustained abhorrent behavior. Merchant used three minor girls to further his sex trafficking business; as noted above, he also trafficked an adult victim. Merchant should not get credit for refraining from violently hitting or tricking his teenage victims. Plying his victims with drugs and alcohol to induce compliance in his trafficking enterprise is equally, if not more, insidious than feigning romantic interest in his victims, and is tantamount in certain respects to using force. Indeed, this practice, in the Government's view and as reflected by the Guidelines calculation, demonstrates that in some sense the defendant ran his sex trafficking operation as a larger volume business, exploiting and monetizing more victims as if they were objects rather than people.

The defendant's role, the extent of the harm he imposed on these vulnerable victims, and the seriousness of the offense are all appropriately addressed and accounted for in the Guidelines calculation. Accordingly, a sentence within the Stipulated Guidelines Range of 235 to 293 months' imprisonment would be just and proper here.

### 3. The Court Should Reject Defendant's Contention that a Lengthy Sentence Unduly Punishes Merchant's Family

Given Merchant's sustained exploitation of young girls, the defendant's argument that "a lengthy term of imprisonment would unduly punish his family, especially his daughter," Def. Mem. at 11, simply is inadequate. As with every criminal case, the consequences of the defendant's incarceration for his or her family, especially a defendant's children, are sad and unavoidable. But the defendant's contention misses the point—*he* put his family in this position, and any undue punishment is attributable directly to his actions. The defendant's assertion that he "values being a father over all else," *id.*, given his offense conduct, is a particularly offensive

---

[4] The PSR states that Merchant provided Victim-1 and Victim-2 with drugs. (PSR at ¶¶ 13, 14.) Merchant did not object to any of the facts as set forth in the PSR. (PSR at 24.) To the extent that Merchant is making a belated objection now, the Government disputes Merchant's assertions that he did not provide these victims with drugs. Nonetheless, given all of the sentencing factors, and the horrors of Merchant's conduct that he does not dispute, a sentence within the Stipulated Guidelines Range is appropriate even if the Court were to credit Merchant's self-serving assertion.

contention. He did not prioritize fatherhood when he sold Victim-1, Victim-2, and Victim-4 for profit. These victims were minor girls and daughters. Merchant, however, did not see them as people, he did not see them as someone's daughter, he saw them as objects to be purchased and sold. That Merchant is a father himself does nothing to mitigate his conduct; to the contrary, it only further demonstrates the depravity of his conduct.

### 4. *The COVID-19 Pandemic Does Not Support a Non-Guidelines Sentence*

The defendant's supplemental sentencing memorandum argues that his conditions of confinement at the Metropolitan Correctional Center ("MCC") and, later, the Metropolitan Detention Center ("MDC") warrant a downward variance to the 120-month, mandatory minimum sentence. The Government does not dispute that the Court has discretion to issue a downward variance related to the COVID-19 pandemic. Indeed, in its recent sentencing of Lesane, the Court accounted for those conditions by decreasing by six months the length of the sentence the Court indicated it otherwise would have imposed. (*See* Dkt. No. 254, Lesane Sent. Tr. at 41-42).

The measures particular to the defendant's experience—quarantine at the MCC and MDC, for example—were undoubtedly challenging, but equally necessary to the BOP's mandate of mitigating the virus's spread and limiting the defendant's exposure to others. As the Court is aware, the BOP generally, and the MCC and MDC specifically, are actively managing the risks presented by COVID-19. Starting in January 2020, the BOP implemented an Action Plan for COVID-19.[5] The BOP continues to revise and update that Action Plan in response to the fluid nature of the COVID-19 pandemic, and in response to the latest guidance from experts at the World Health Organization ("WHO"), the Centers for Disease Control and Prevention (the "CDC"), and the Office of Personnel Management. In addition, the BOP created an "agency task force" to study and coordinate its response to COVID-19, including using "subject-matter experts both internal and external to the agency including guidance and directives from the WHO, the CDC, the Office of Personnel Management, Department of Justice, and the Office of the Vice President." BOP's current Action Plan, which the MCC has implemented, includes numerous measures designed to protect inmates and staff from the coronavirus pandemic.[6] Moreover, the BOP has begun administering vaccines to inmates and staff.[7] These and other steps show that the BOP is meaningfully addressing the risk posed by COVID-19 to inmates, and that it has taken the threat seriously, has mitigated it, and continues to update policies and procedures in accord with the facts and recommendations, as well as directives from the Attorney General.

The Government recognizes that the pandemic has in some circumstances made inmates' incarceration "harsher and more punitive than would otherwise have been the case … because the federal prisons . . . have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." *United States v. Rodriguez*, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) (internal quotation marks and citation omitted). The defendant, like other inmates, has been subject to lockdowns at MCC and MDC in

---

[5] *See* https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response.

[6] *See* https://www.bop.gov/coronavirus/covid19_status.jsp.

[7] *See* https://covid.cdc.gov/covid-data-tracker/#vaccinations.

an effort to prevent the spread of COVID-19 within that facility. However, on the current record, the defendant has not demonstrated that his incarceration has been substantially harsher because of COVID-19. *See United States v. Pinto-Thomas*, 454 F. Supp. 3d 327, 331 (S.D.N.Y. 2020) ("[A]s stated by the Court during oral argument on the instant motions, lockdowns are a routine fact of life for incarcerated defendants and are hardly extraordinary."). Furthermore, the substantial downward variance that he requests would simply not be commensurate with the offense or the harm to his victims.

> 5. *The Need to Protect the Public and Deter the Defendant and Other Similarly Situated Individuals*

The defendant's criminal history also is an aggravating factor that favors the imposition of a sentence within the Stipulated Guidelines Range. As noted by Probation, this is the defendant's twelfth criminal conviction. Prior to this offense, the defendant was convicted of serious crimes and sentenced to substantial prison terms. These sentences did nothing to deter the defendant from committing this sustained offense, which the most serious of his long criminal history. Repeated interactions with the criminal justice system, convictions, and periods of incarceration have had no discernible effect on the defendant, who has instead engaged in ever escalating criminal conduct. As a certain point, recidivism requires the Court to consider incapacitation as a sentencing factor. Here, the defendant's record suggests that a substantial sentence is necessary to deter Merchant and to protect the public from future crimes by this defendant.

Moreover, there also is a stark need for general deterrence in this case, as the offense involved the victimization of some of the most vulnerable members of society. A substantial sentence of incarceration within the Stipulated Guidelines Range would send a powerful message to others who might seek to victimize minors that such actions will not be taken lightly. A period of incarceration within the Stipulated Guidelines Range of 235 to 293 months would demonstrate that those who victimize children—*especially* vulnerable ones from the foster care system—will be held accountable for the incalculable pain that they impose on their victims.

### E. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 235 to 293 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:    /s/
    Mollie Bracewell
    Elinor Tarlow
    Jacob Gutwillig
    Peter J. Davis
    Assistant United States Attorneys
    (212) 637-2218/1036/2215/2468